USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 7/31/15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
Y.F., individually and on behalf of K.H., a minor, :
:
                                    Plaintiff, :
:    14 Civ. 6322 (LGS)
        -against- :
:    **OPINION AND ORDER**
:
:
THE NEW YORK CITY DEPARTMENT OF :
EDUCATION, :
                                Defendant. :
------------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

       Plaintiff Y.F., individually and on behalf of her child, K.H., brings this action against the New York City Department of Education ("DOE") pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq.  Plaintiff seeks review of the May 9, 2014, decision of the New York State Review Officer ("SRO Decision"), affirming the January 29, 2013, decision of the Impartial Hearing Officer ("IHO Decision"), which found that the DOE adequately provided a free appropriate public education ("FAPE") to K.H. during the 2012-2013 school year.  The parties have cross-moved for summary judgment.  Because the SRO Decision is sufficiently supported by the record, Plaintiff's motion is denied, and the DOE's motion is granted.

**I.    STATUTORY FRAMEWORK**

       The IDEA mandates that states receiving federal special education funding provide disabled children with a FAPE.  *See* 20 U.S.C. § 1412(a)(1)(A); *see also M.W. ex rel S.W. v. N.Y.C. Dep't of Educ.*, 725 F.3d 131, 135 (2d Cir. 2013).  "To ensure that qualifying children receive a FAPE, a school district must create an individualized education program ('IEP') for each such child." *R.E. v. N.Y.C. Dep't of Educ.*, 694 F.3d 167, 175 (2d Cir. 2012).  An IEP is a

written statement that "'describes the specially designed instruction and services that will enable the child to meet' stated educational objectives and is reasonably calculated to give educational benefits to the child." *M.W.*, 725 F.3d at 135 (quoting *R.E.*, 694 F.3d at 175); *see also* 20 U.S.C. § 1414(d).

New York delegates the development of an IEP to a local Committee on Special Education ("CSE"). *See* N.Y. Educ. Law § 4402(1)(b)(1). At a minimum, a CSE must be composed of the student's parent(s); a special education teacher; a regular education teacher if the student participates in a regular education program; a school psychologist; a school district representative; an individual who can interpret the instructional implications of evaluation results; a school physician; and a parent of another student with a disability. *See* Educ. § 4402(1)(b)(1)(a). "The CSE must examine the student's level of achievement and specific needs and determine an appropriate educational program." *R.E.*, 694 F.3d at 175 (citation omitted).

If a parent believes that the DOE has failed to provide a FAPE to his or her child, the parent may "unilaterally place their child in a private school at their own financial risk and seek tuition reimbursement." *M.W.*, 725 F.3d at 135 (citing *Florence Cnty. Sch. Dist. Four v. Carter*, 510 U.S. 7, 9–10, 16 (1993)). To seek reimbursement, the parent must file a due process complaint with the DOE, which triggers administrative proceedings beginning with a hearing before an Impartial Hearing Officer ("IHO"). *See id.* (citing 20 U.S.C. §§ 1415(b)(6), (f); Educ. § 4401(1)). The IHO hearing is governed by the three-part *Burlington/Carter* test, as construed by New York Education Law § 4404(1)(c): "(1) the DOE must establish that the student's IEP actually provided a FAPE; should the DOE fail to meet that burden, the parents are entitled to

reimbursement if (2) they establish that their unilateral placement was appropriate and (3) the equities favor them." *M.W.*, 725 F.3d at 135 (footnote and citations omitted).

An IHO's decision may be appealed to a State Review Officer ("SRO"). *See* Educ. § 4402(2); *M.H. v. N.Y.C. Dep't of Educ.*, 685 F.3d 217, 225 (2d Cir. 2012) (citing *Grim v. Rhinebeck Cent. Sch. Dist.*, 346 F.3d 377, 379–80 (2d Cir. 2003)). An SRO's decision is the final administrative decision, but an aggrieved party may seek review of the decision by commencing an action in federal district court. *See* 20 U.S.C. § 1415(i)(2)(A); *M.W.*, 725 F.3d at 135–36.

## II.    BACKGROUND

### A.    K.H.'s Educational History

K.H. was born in 1997, which means she was 15 years old during the 2012-2013 school year. She was classified by the DOE as a student with an intellectual disability and tested at the first or second grade level in certain academic areas. K.H. had received public education services from kindergarten through eighth grade in the New York City public school system. In 2011, she began attending the Cooke Center Academy ("Cooke"), a private school in Manhattan that focuses on students with disabilities. K.H. attended Cooke for the 2011-2012 school year and re-enrolled in 2012-2013.

### B.    K.H.'s Individualized Education Program for 2012-2013

On May 25, 2012, the DOE convened a meeting of the CSE to develop K.H.'s IEP for the 2012-2013 school year. The CSE consisted of K.H.'s parent, Y.F.; an advocate for Y.F. and K.H.; a special education teacher; a district representative who also served as the school psychologist; the parent of another child; a representative from Cooke; and K.H.'s then-math teacher from Cooke. In developing the IEP, the CSE considered a psycho-educational report; a

progress report from Cooke; a vocational assessment completed by a psychologist; a social language development test; and a previous IEP for the 2011-2012 school year.  The CSE also took into account comments from Y.F., K.H.'s math teacher and Cooke's representative.

The completed IEP stated that K.H. was currently a ninth grade student at Cooke and that her English Language Arts ("ELA") class had a ratio of twelve students to one teacher and one classroom assistant ("12:1:1") and her math class had a ratio of 9:1:1.  The IEP discussed K.H.'s performance in ELA and math and noted areas for improvement, and it addressed her social and academic development.  The IEP also stated that K.H. benefitted from occupational therapy to address fine motor concerns.  Under "management needs,"[1] the IEP listed resources that would help K.H.'s learning needs based on her current level of performance, such as a smaller than mandated general education class.  The IEP also provided goals for the upcoming year, including for ELA, math, socio-emotional development, counseling, occupational therapy and speech.

To address the above concerns and goals, the IEP recommended K.H. be placed year-round in a "D-75 program," which is a specialized school, with a classroom ratio of 12:1:1.  It also proposed several "related services": individualized speech therapy (one forty-five minute session per week); group speech therapy (one forty-five minute session per week in a group of up to four students); occupational therapy (two forty-five minute sessions per week in a group of up to two students[2]); and counseling (one forty-five minute session per week in a group of up to five students).

---

[1]   The IEP capitalizes headings, which this Opinion standardizes for ease of reading.
[2]   At the hearing before the IHO, the Cooke CSE coordinator and the DOE's school psychologist both testified that the IEP incorrectly listed the occupational therapy group size as two students rather than six students.  This difference, however, does not impact this Opinion.

The IEP also listed activities to facilitate K.H.'s transition from school to post-school activities under categories for instruction, related services, community experiences, post-school adult living objectives and acquisition of daily living skills.  The transition activities listed in the IEP included, inter alia, instruction in a small group to increase self-advocacy skills, participation in a vocational program to aid job preparedness and instruction in travel readiness skills.

### C. Rejection of the Recommended School Placement

The IEP stated that K.H. should be placed in a "NYC DOE Specialized School," but did not include a specific school placement.  In a final notice of recommendation dated June 19, 2012, the DOE notified Plaintiff that K.H. would be placed at P721X at the Stephen D. McSweeney School ("McSweeney").

In a letter dated August 8, 2012, Plaintiff informed the DOE that she had visited McSweeney for two hours, found it inappropriate and would place K.H. at Cooke for the 2012-2013 school year and seek reimbursement.  Plaintiff explained her reasons -- that McSweeney was "too restrictive," kept the bathrooms locked, used paraprofessionals, would not provide appropriate support for K.H. and would require the use of an outside consultant to supply some services required by the IEP.  K.H. re-enrolled in Cooke for the 2012-2013 school year, which began in September 2012 and ended in June 2013.

### D. Procedural History

#### i. Due Process Complaint and IHO Decision

On August 7, 2012, Plaintiff filed a due process complaint and requested an impartial hearing, alleging, inter alia, that: (1) the IEP was procedurally and substantively flawed; (2) the CSE failed to provide an appropriate transition plan; (3) the CSE was not duly constituted; (4) the CSE failed to recommend an appropriate program; and (5) the CSE failed to offer an

5

appropriate placement.

An IHO conducted a hearing over three non-consecutive days between October 25, 2012, and January 4, 2013.  On January 29, 2013, the IHO issued a decision finding that the DOE had offered K.H. a FAPE for the 2012-2013 school year.  The IHO Decision found Plaintiff's allegations that the IEP was procedurally and substantive flawed to be meritless because the CSE was properly constituted; Plaintiff and her advocate "had every opportunity to participate in the entire CSE"; and the IEP and its goals for K.H. were appropriate.  Although the DOE did not produce a witness to testify about the appropriateness of placing K.H. in McSweeney, the IHO found the record contained sufficient evidence to conclude that McSweeney could implement the IEP.  The IHO also considered and rejected Plaintiff's arguments that McSweeney was an inappropriate placement and found, among other things, that McSweeney would provide K.H. "with appropriate transition and academic services."

Although it was unnecessary to do so, the IHO considered prongs two and three of the *Burlington/Carter* test "to complete the record" and found that Cooke was an appropriate placement for K.H., but that the equities did not favor reimbursement.

### ii. SRO Appeal and Determination

On March 4, 2013, Plaintiff appealed the IHO Decision to the SRO.  Plaintiff limited her appeal to the portion of the IHO Decision finding:  (1) the proposed placement at McSweeney was appropriate; and (2) the equities did not favor Plaintiff.  Plaintiff's Verified Petition unambiguously stated that she was not appealing the portion of the IHO Decision finding that the IEP was appropriate. On March 29, 2013, Defendants filed an answer and cross-appealed the IHO Decision to the extent it found Cooke to be an appropriate unilateral placement for K.H.  On April 15, 2013, Plaintiff answered the cross-appeal.

On May 9, 2014, in a well-reasoned and carefully explained decision, the SRO dismissed both Plaintiff's appeal and Defendant's cross-appeal. The SRO, in examining the scope of review, determined that the IHO's finding that the IEP was appropriate was final and binding on the parties because Plaintiff had explicitly stated that she was not challenging this portion of the IHO Decision. Accordingly, the SRO focused its review on the IHO's finding that the proposed placement was appropriate.

Although the SRO questioned whether Plaintiff could challenge Defendant's proposed placement without K.H. ever attending the school, the SRO nevertheless addressed each of Plaintiff's challenges and found them to be meritless.

First, based on the hearing record, the SRO rejected as speculative Plaintiff's assertion that McSweeney could not implement the management and behavioral needs identified in the IEP. The SRO noted that the IEP indicated K.H. did not have behaviors that interfered with learning and did not need a behavioral intervention plan. Second, the SRO also rejected Plaintiff's argument that McSweeney could not implement certain related services included in the IEP. The SRO reasoned that reports that the school had experienced difficulties in the past providing related services did not mean that the school would be unable to provide K.H. with the related services specified in the IEP. The SRO also held that the use of outside providers was an acceptable method of providing related services and not a material deviation from the IEP.

Third, the SRO rejected Plaintiff's assertion that K.H. would not be grouped appropriately based on her academic, social/emotional and behavioral needs because: (1) this requirement was not mandated by the IEP; and (2) it required speculation about what classroom K.H. would be placed in had she attended McSweeney. Fourth, the SRO found Plaintiff's assertion that McSweeney was too large for K.H. and had a "prison like feel" meritless because

the IEP did not contain any restrictions or recommendations on the size of the school.  Fifth, Plaintiff's assertion that McSweeney would not provide one-on-one instruction was also rejected because the IEP did not require it.

Sixth, in rejecting Plaintiff's challenges about McSweeney's methodology, the SRO found that the IEP did not require a specific methodology and that the hearing record did not support Plaintiff's assertion that K.H. required one particular methodology or curriculum. Seventh, the SRO stated that Plaintiff's allegation that a "paraprofessional" provided students with instruction was vague as to what "paraprofessional" meant and, in any event, was speculative.  Finally, the SRO found Plaintiff's arguments about locked bathrooms and the purported lack of "travel training" and internships meritless because they were conclusory, lacked factual support and presented no conflict with the IEP.

## III.    STANDARD

A motion for summary judgment in the IDEA context is "in substance an appeal from an administrative determination, not a summary judgment."  *Lillbask ex rel. Mauclaire v. Conn. Dep't of Educ.*, 397 F.3d 77, 83 n.3 (2d Cir. 2005) (citations and internal quotation marks omitted); *accord M.W.*, 725 F.3d at 138 ("Summary judgment in the IDEA context . . . is only a pragmatic procedural mechanism for reviewing administrative decisions.") (citation and internal quotation marks omitted).  In reviewing an SRO's decision, a district court determines whether the SRO's decision is supported by "the preponderance of the evidence, taking into account not only the record from the administrative proceedings, but also any further evidence presented before the District Court by the parties."  *Grim*, 346 F.3d at 380 (citation and internal quotation marks omitted).  In evaluating the sufficiency of an IEP, neither the administrative officers nor

the courts may rely on "retrospective testimony that the school district would have provided additional services beyond those listed in the IEP . . . ." *R.E.*, 694 F.3d at 186.

A district court "must give due weight to [the administrative] proceedings, mindful that the judiciary generally lack[s] the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy." *T.P. ex rel. S.P. v. Mamaroneck Union Free Sch. Dist.*, 554 F.3d 247, 252 (2d Cir. 2009) (per curiam) (alterations in original) (citation and internal quotation marks omitted).  Accordingly, a federal court may not "substitute [its] own notions of sound educational policy for those of the school authorities . . . ." *M.W.*, 725 F.3d at 139 (citation and internal quotation marks omitted).  "[D]eterminations regarding the substantive adequacy of an IEP should be afforded more weight than determinations concerning whether the IEP was developed according to the proper procedures." *M.H.*, 685 F.3d at 244.

In deciding how much deference to award the IHO and SRO, a reviewing court may take into account "whether the decision being reviewed is well-reasoned, and whether it was based on substantially greater familiarity with the evidence and the witnesses than the reviewing court." *R.E.*, 694 F.3d at 189 (citation and internal quotation marks omitted).  "The deference owed depends on both the quality of the opinion and the court's institutional competence." *C.F. ex rel. R.F. v. N.Y.C. Dep't of Educ.*, 746 F.3d 68, 77 (2d Cir. 2014) (footnote omitted) (citing *M.H.*, 685 F.3d at 244).

**IV.   DISCUSSION**

Plaintiff does not challenge the adequacy of the IEP.  She objects only to the DOE's proposed placement at McSweeney, asserting that K.H. was denied a FAPE for the 2012-2013 school year because McSweeney was not "appropriate."  The SRO's well-reasoned decision correctly concluded that the proposed placement did not violate the IDEA.

In deciding whether or not a proposed placement is appropriate, a court may consider only information available "as of the time of the parents' placement decision." *R.E.*, 694 F.3d at 195. "Speculation that the school district will not adequately adhere to the IEP is not an appropriate basis for unilateral placement." *Id.* "While it is speculative to conclude that a school with the capacity to implement a given student's IEP will simply fail to adhere to that plan's mandate, it is not speculative to find that an IEP cannot be implemented at a proposed school that lacks the services required by the IEP." *M.O. v. N.Y.C. Dep't of Educ.,* No. 14-1473-cv, --- F.3d ----, 2015 WL 4256024, at *7 (2d Cir. July 15, 2015) (per curiam) (internal citation omitted).

In cases that have found that a placement was inappropriate, the inability of the proposed school to provide a FAPE as defined by the IEP was clear at the time the parents rejected the placement. The Second Circuit in *M.O.* cited two examples. *Id.* In *D.C. ex rel. E.B. v. N.Y.C. Dep't of Educ.,* 950 F. Supp. 2d 494, 499 (S.D.N.Y. 2013), the IEP promised a "seafood free environment," but the child's mother was informed by the proposed placement that it was not seafood-free and that seafood was prepared in various areas at the school. The court properly held that the proposed placement was inappropriate under the IDEA. *Id.* at 509–11. In *B.R. ex rel. K.O. v. N.Y.C. Dep't of Educ.,* 910 F. Supp. 2d 670 (S.D.N.Y. 2012), the IEP for an autistic child specified that the child required one-on-one occupational therapy. When the child's mother visited the proposed placement, the school informed her that therapy was performed with one therapist and *six* students. *Id.* at 676. Based on this information, the mother rejected the placement. *Id.* at 676–77. The court held that the parent was entitled to reimbursement because the proposed placement failed to conform to the IEP, and therefore failed to provide the child a FAPE. *Id.*

The record in this case does not support Plaintiff's argument that the proposed placement could not have implemented the IEP.³ Plaintiff offers a laundry list of purported reasons why McSweeney could not implement the IEP, but only two relate to specific requirements in the IEP: (1) McSweeney's alleged inability to provide related services; and (2) "a lacking in [McSweeney's] math program." These arguments are unpersuasive.

Plaintiff asserts McSweeney could not provide the related services required by the IEP because, first, a report showed McSweeney had not delivered related services to all students in the past and, second, some of these services would need to be provided off-site through an outside provider. With respect to the first assertion, the fact that the placement had not always delivered all required special education services to its students does not establish that the placement could not provide the required services to K.H. *See R.E.,* 694 F.3d at 195) (rejecting parents' argument that proposed placement could not implement IEP because "a large percentage of students [at placement] have been and continue to be 'underserved'" as speculative). As for the second argument, even if the IEP's requirement that related services be provided in a "[s]eparate [l]ocation therapist room" could be read to require the services be provided at the school, the SRO correctly found that the use of an outside provider was not such a material deviation from the student's IEP that she was denied a FAPE. *See A.P. v. Woodstock Bd. of Educ.*, 370 F. App'x 202, 205 (2d Cir. 2010) (finding failure to provide student with aide as required by his IEP did not constitute material failure to implement the IEP). Accordingly, this argument fails.

---

³ Plaintiff asserts that the SRO Decision incorrectly excluded the testimony of the Cooke CSE Coordinator. This Opinion assumes arguendo that this testimony should be considered and rejects it for the reasons stated in Section IV of this Opinion.

Plaintiff also asserts that McSweeney could not implement the IEP because a quality review report allegedly showed its math program was "lacking."  The IEP included three annual goals for K.H in math:  (1) solving "1 step addition and subtraction word problems"; (2) using geometric terminology to describe her environment; and (3) solving one digit by one digit multiplication problems.  The quality review report stated that the school "recognized that students needed more support in this area" and the teachers' ability to "use the curriculum to meet the meets of the students and to make data-informed adjustments is limited and inconsistent."  These general statements in the report do not show that McSweeney was incapable of helping K.H. meet the IEP's annual goals.  This argument also fails.

Plaintiff's remaining arguments about various aspects of McSweeney, ranging from its size, to its curriculum, to its environment, are not contrary to any specific requirement in the IEP. It is "speculative to conclude that a school with the *capacity* to implement a given student's IEP will simply fail to adhere to that plan's mandate . . . ." *M.O.*, 2015 WL 4256024 at *7 (emphasis added); *accord S.E. v. N.Y.C. Dep't of Educ.* No. 14 Civ. 4163, --- F. Supp. 3d ----, 2015 WL 4092386, at *13 (S.D.N.Y. July 6, 2015) (finding "assigned placement in a self-contained classroom [did] not contravene the IEP" because IEP did not mandate interactions with typically-developing peers).  As these arguments do not relate to any services in the IEP that McSweeney was incapable of performing, they are the type of impermissibly speculative arguments characterized by *M.O.* as "substantive attacks on [the] IEP that [are] couched as challenges to the adequacy of [McSweeney]." 2015 WL 4256024 at *7.  Accordingly, these arguments fail.

Because the first prong of the *Burlington/Carter* test favors the DOE, the final two prongs of that test, namely whether (1) K.H.'s placement at Cooke was appropriate and (2) equitable considerations favor Plaintiff, are not considered.

## V. CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is DENIED and Defendant's cross-motion for summary judgment is GRANTED. The Clerk is respectfully directed to close the motions at Docket Numbers 17 and 20, and to close the case.

SO ORDERED.

Dated: July 31, 2015
      New York, New York

                                        **LORNA G. SCHOFIELD**
                                      **UNITED STATES DISTRICT JUDGE**